FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

NOV - 6 2017

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SACR17-00154-CJC

DONALD OKADA,

    Plaintiff,

vs.

MARK WHITEHEAD

    Defendant.

CASE NO. SACV 15-1449-JLS (KES)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT MARK WHITEHEAD SHOULD NOT BE HELD IN CRIMINAL CONTEMPT (Doc. 322)**

1

Before the Court is Plaintiff Donald Okada's Motion for an Order to Show Cause why Defendant Mark Whitehead should not be held in criminal contempt. (Mot., Doc. 300.) Whitehead has Opposed, and Okada has Replied. (Opp'n, Doc. 317; Reply, Doc. 322.) After carefully reviewing the papers and hearing oral argument, the Court GRANTS IN PART and DENIES IN PART the Motion.

I. **BACKGROUND**

After a four-day jury trial where the jury found in favor of Okada on all claims and defenses submitted to it, this Court issued its findings of fact and conclusions of law. In its Order, this Court concluded that Whitehead's testimony at trial "lack[ed] credibility" and provided "examples of Whitehead's testimony and conduct that raised questions about his truthfulness." (Findings of Fact ¶ 40, Doc. 270.) The Court also approved Okada's request to appoint a receiver to sell "Lions Gate," a large property located in the Dominican Republic that has been the focus of this litigation. (*Id.* ¶ 60.) To execute this decision, the Court issued the Receivership Order on April 17, 2017, which established specific duties that Whitehead must perform. (Receivership Order.) Most notably, the Receivership Order provided:

1. "Mark Whitehead [is] ordered to execute and prepare all documents, and to perform all acts asked of [him] by the Receiver, including any acts needed to (i) facilitate the sale of Lions Gate, or Rockford and/or the SHR SOLAR Companies, (ii) determine and pay any taxes and fees owed by Rockford, the SHR SOLAR Companies, or Lions Gate to the government of the Dominican Republic arising from the sale of the aforementioned asset(s), (iii) facilitate the ongoing or future rentals of Lions Gate, and (iv) facilitate the maintenance and upkeep of Lions Gate." (Receivership Order ¶ 20, Doc. 278.)
2. "Mark Whitehead is enjoined from any attempts to sell or transfer Rockford, the SHR SOLAR Companies, and Lions Gate. Any inquiries or contacts received by Mark Whitehead regarding the sale of Rockford or any of its assets must be promptly disclosed by him to the Receiver." (*Id.* ¶ 23.)

3. "Within 14 days of entry of this Order, Mark Whitehead shall transfer all documents and website accounts relating to the rentals of Lions Gate (as described in paragraphs 7 and 8), or the management, maintenance, or upkeep of that property (as described in paragraph 9) to the Receiver." (*Id.* ¶ 21.)

The day that the Order was issued, Okada's Counsel emailed the Receiver with Whitehead's Counsel cc'ed, stating: "The Court has approved your appointment as the Receiver over the Lions Gate property. I'm copying James Bryant, counsel for defendant Mark Whitehead, so you can communicate directly with either of us regarding your instructions." (April 17 Email, Doc. 322-8.) The Court's Receivership Order was attached to the email. (*See id.*)

On June 16, 2017, the Court issued the Final Judgment in this Case, which also provides specific obligations that Whitehead must perform:

1. "Whitehead [is] ordered to execute and prepare all documents, and to perform all acts, requested of [him] by the Receiver." (Final Judgment ¶ 4a, Doc. 316.)

2. "Whitehead shall immediately transfer all documents and accounts relating to the rentals, management, maintenance, and upkeep of Lions Gate to the Receiver." (*Id.* ¶ 4b.)

3. "Whitehead, anyone working in concert with him, and any successors are enjoined from any attempt to sell or transfer Rockford, the SHR SOLAR Companies, or Lions Gate." (*Id.* ¶ 4d.)

On May 1, 2017, after the Court issued the Receivership Order but before the issuance of the Final Judgment, the Receiver traveled to the Dominican Republic to inspect Lions Gate. (Everett Decl. ¶ 4, Doc. 300-6.) On May 2, 2017, the Receiver met with Jennifer Kirkman, the marketing and sales director for Sea Horse Ranch, the exclusive residential community that includes Lions Gate. (*Id.*) When the Receiver provided Kirkman with a copy of the Receivership Order, Kirkman expressed surprise because Whitehead had informed her that he had prevailed at trial. (*Id.*) Kirkman then called Whitehead several times to obtain his consent for the Receiver to access the property. (*Id.*)

Whitehead claims he first learned of the Court's Receivership Order during Kirkman's call. (Whitehead Decl. ¶¶ 8–9.) Whitehead further asserts, that "[a]fter numerous discussions between myself, Kirkman and my Dominican Republic counsel, I determined that it would be up to [his Dominican Counsel] to make the decision whether or not to permit the delivery of possession of the property to the receiver." (*Id.* ¶ 10.) So, Whitehead avers that he denied the Receiver permission to enter Lions Gate because "Dominican Courts had previously made ruling s [*sic*] that were in direct contradiction to" this Court's Receivership Order and Whitehead did not know how granting the Receiver access "would legally impact [his] case." (*Id.* ¶ 11.)

Besides denying the Receiver access to the property, Whitehead has not released any of his bank records relating to Lions Gate. (Everett Decl. ¶ 2.) Whitehead does not dispute that he has not turned over any bank records, and the only explanation he has provided for not doing so is that "Chase Bank closed the account on its own accord due to the fact that I was unable to maintain a minimum deposit limit required by the bank." (Whitehead Decl. ¶ 4.) Whitehead also failed to hand over the online rental listing information for Lions Gate within the fourteen days set forth in the Court's Receivership Order, supposedly because he was unaware of the Court's Receivership Order. (*See id.* ¶¶ 9, 13.) After Okada's Counsel threatened contempt proceedings, the Receiver obtained, on May 18, 2017, the "iBride" and "VRBO/Homeaway" account information for Lions Gate. (Everett Decl. ¶ 3.) While the Receiver was able to access the iBride account, the Receiver attests that the VRBO/Homeaway account requires additional security information that Whitehead did not provide. (*Id.*) In addition, Whitehead continues to refuse to transfer to the Receiver "www.lionsgatemansion.com" because "the receiver would have had access to numerous communications that were protected by the attorney client privilege." (Whitehead Decl. ¶ 20.)

One week after Okada filed this contempt Motion, on June 1, 2017, Whitehead posted a picture of Lions Gate on his Facebook profile picture along with the caption, "going for a song make offers." (Whitehead Profile Page, Exh. 1, Doc. 322-14.) Two

weeks later, on June 15, 2017, Whitehead posted the same picture of Lions Gate on his Facebook profile picture along with the caption, "submit any offers must sell." (*See id.*) Both posts link to a listing for Lions Gate offering to sell the property for $14 million on the website "www.palmbeachtrumped.com." (Lions Gate Listing, Exh. 2, Doc. 322-15.) The "About" section of this website features a profile of Mark Whitehead. (About Page, Exh. 3, Doc. 322-16.) Whitehead, who has a Florida real estate broker's license, has also listed Lions Gate for sale using his name and real estate brokerage firm on a real estate listing website. (Florida Broker Report, Exh. 2, Doc. 322-12; Lions Gate Listing, Exh. 1, Doc. 322-11.) On July 7, 2017, Whitehead lowered the price on the listing from $14 to $13 million. (*See id.*)

## II.  LEGAL STANDARD

"The power of a court to punish a defendant for refusing to comply with its direct order cannot be disputed." *United States v. Armstrong*, 781 F.2d 700, 703 (9th Cir. 1986); *see* 18 U.S.C. § 401. "Criminal contempt is intended to vindicate the court's authority in the face of contumacious and disrespectful acts." *Armstrong*, 781 F.2d at 703. Thus, unlike civil contempt, which "is coercive or compensatory," "the purpose of criminal contempt is punitive." *Id.* "Criminal contempt is established when [1] there is a clear and definite order of the court, [2] the contemnor knows of the order, and [3] the contemnor willfully disobeys the order." *United States v. Doe*, 125 F.3d 1249, 1254 (9th Cir. 1997) (quoting *United States v. Powers*, 629 F.2d 619, 627 (9th Cir.1980)). Because the same conduct can give rise to both civil and criminal contempt, the difference between the two depends on the "character and purpose" of the relief sought, rather than whether the proceedings are labeled "criminal" or "civil." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (quoting *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 827 (1994)). "The civil contemnor is said to 'carr[y] the keys of his prison in his own pocket,' whereas the criminal contemnor 'is furnished no key, and he cannot shorten the term by promising not to repeat the offense.'" *Id.* at 629 (quoting *Bagwell*, 512 U.S. at 828–29).

Federal Rule of Criminal Procedure 42 establishes the process for holding a party in criminal contempt for disobeying a court order. First, "the court must give the person notice in open court, in an order to show cause, or in an arrest order" (1) identifying "the time and place of the trial,"(2) "allow[ing] the alleged contemnor a reasonable time to prepare his defense," and (3) "stat[ing] the essential facts constituting the charged criminal contempt." Fed. R. Crim. P. 42(a)(1). A court "must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney." Fed. R. Crim. P. 42(a)(2).

### III. DISCUSSION

Okada seeks an order to show cause why Whitehead should not be held in contempt for (1) attempting to sell Lions Gate, (2) denying the Receiver access to the property, (3) refusing to disclose any bank records associated with Lions Gate, and (4) refusing to hand over all online rental listings for the property. (*See* Mem. at 8–9; Reply at 3–7.) For the following reasons, the Court will issue a criminal contempt referral for Whitehead's attempts to sell the property, refusal to grant the Receiver access to Lions Gate, failure to hand over all bank records, and refusal to hand over all non-privileged records from the Lions Gate website and related email account.

#### A. Whether Whitehead Engaged in Contemptable Conduct

##### 1. Attempting to Sell Lions Gate

The Court's Receivership Order and Final Judgment prohibited Whitehead from "any attempts to sell or transfer Rockford, the SHR SOLAR Companies, and Lions Gate." (Receivership Order ¶ 23; *see also* Final Judgment ¶ 4d.) By listing Lions Gate on his personal website, his Facebook page, and a real estate website, Whitehead defied the Court's unmistakable instructions. Although Whitehead claims that he was unaware of the Court's Order until May 2, 2017, there is no dispute that—by the time Whitehead wrote the June 1, 2017 and June 15, 2017 Facebook posts and lowered the price on the real estate website listing from $14 to $13 million on July 7, 2017—Whitehead knew of the Court's Orders. Accordingly, Whitehead committed contemptable conduct by attempting to sell

Lions Gate.

### 2. Denying the Receiver Access to the Property

Whitehead does not dispute that he denied the Receiver access to the property after learning of this Court's Receivership Order. (Whitehead Decl. ¶¶ 10–11.) Whitehead's main excuse for refusing to grant the Receiver access to the property is that he relied on his Dominican Counsel's advice that this Court's orders must first be domesticated in the Dominican Republic before he needs to comply with them. (Whitehead Decl. ¶¶ 10–11.) This argument is meritless for two reasons: First, "good faith reliance on the advice of counsel to disobey a court order" is not a defense to a criminal contempt charge. *Armstrong*, 781 F.2d at 706; *see Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 953 (9th Cir. 2014) (holding in a civil contempt proceeding that "[p]arties who act on the unreasonable advice of counsel risk being held in contempt if their actions violate a court's order"). So, Whitehead cannot evade criminal contempt sanctions by consciously abdicating decision-making to his Dominican Counsel. (Whitehead Decl. ¶ 10–11.) Second, and more importantly, the domestication process in the Dominican Republic concerns only whether the Court's Orders can be enforced in that country against Whitehead's will. (Kaluche Decl. ¶ 8, Doc. 322-1; Ramos Decl. ¶¶ 6, 10, Doc. 318.) Whitehead has supplied no evidence that allowing the Receiver to access the property would be illegal under Dominican law. *See In re Icenhower*, 755 F.3d 1130, 1140 (9th Cir. 2014) (affirming contempt finding because contemnors failed to show that it was "legally impossible" for them to comply with the bankruptcy court's order). Whitehead asserts that he denied the Receiver access to Lions Gate merely because he "was not familiar [with] how this would legally impact my case." (Whitehead Decl. ¶ 11.) Thus, by denying the Receiver access to the property, Whitehead committed contemptable conduct.

### 3. Refusing to Disclose Bank Records

This Court's Receivership Order required Whitehead to "transfer all documents . . . relating to the rentals of Lions Gate . . . , or the management, maintenance, or upkeep of

that property . . . to the Receiver." (Receivership Order ¶ 21; *see also* Final Judgment ¶ 4b.) In contravention of these Orders, Whitehead has not handed over his "Tax Sux" bank account records because, Whitehead asserts, "Chase Bank closed [the] Tax Sux account that received the rents for Lionsgate because he failed to maintain a certain minimum amount of money in the account." (Opp'n at 4; Whitehead Decl. ¶ 4.) Assuming this to be true, it does not explain at all why Whitehead has not handed over his bank records; these documents do not somehow disappear once an account is closed. Because this is the only excuse Whitehead has provided for failing to release his bank records, Whitehead committed contemptable conduct.

### 4. Failing to Hand Over All Online Rental Account Information

Okada finally seeks a criminal contempt referral because Whitehead did not disclose all information necessary to access the VRBO/Homeaway account and failed to hand over access to the "www.lionsgatemansion.com" website. (Mem. at 6; Reply at 9–10.) Whitehead avers that the Receiver never informed him that he needed further information to access the VRBO/Homeaway account. Whitehead further states that he has refused to hand over access to the Lions Gate website because doing so would grant the Receiver access to attorney-client communications stored on the "info@lionsgatemansion.com" email account. (Bryant Decl. ¶ 6, Doc. 319; Opp'n at 9)

Because Okada and the Receiver have submitted no evidence that either of them informed Whitehead or his Counsel that further information was needed to access to VRBO/Homeaway account, a contempt referral is premature. But the Court ORDERS Whitehead to disclose any and all information necessary to access the VRBO/Homeaway account within forty-eight hours. As for the Lions Gate website, the potential that the attorney-client privilege applies to some emails stored on the "info@lionsgatemansion.com" hardly justifies refusing to turn over *any* emails stored in the account. Thus, Whitehead has engaged in contemptuous conduct by refusing to hand over all non-privileged records stored on the "www.lionsgatemansion.com" website and the related "info@lionsgatemansion.com" email account.

### B. Whether a Criminal Contempt Referral is Warranted

Although "the least possible power rule places some limits on the seeking of contempt sanctions[,]" this principle requires a court to consider civil contempt before initiating criminal contempt proceedings "only in those cases where it is attempting to coerce future behavior." *NLRB v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1418 (9th Cir. 1994 (affirming civil contempt sanctions and referring case to district court for criminal contempt trial); *see Armstrong*, 781 F.2d at 703. Thus, "[w]hen . . . the end is punishment of past behavior, criminal contempt can be appropriate without civil contempt being considered first." *A-Plus Roofing, Inc.*, 39 F.3d at 1418. Here, because the Court's aim is to punish Whitehead, referral for criminal contempt proceedings under Rule 42 is appropriate and, indeed, necessary.

Besides this punitive aim, the Court believes that a referral for criminal contempt proceedings is warranted for two reasons. First, Whitehead has engaged in a pattern of conduct that reflects a complete disregard for the judicial process. At the beginning of this case, Whitehead attempted to dismiss this suit by "falsely stat[ing] under penalty of perjury: 'Both my wife and I have driver's licenses that are issued by the State of California, and we do not have nor do we intend to obtain a driver's license with the State of Florida.'" (Findings of Fact ¶ 40a.) During discovery, the Magistrate Judge recommended—and this Court granted—an adverse inference due to Whitehead's failure to preserve relevant emails related to this lawsuit stored in his "mark@markwhitehead.com" email account. (Order, Doc. 97.) At trial, Whitehead offered false testimony under oath, for example, that he was not negotiating a lease agreement for Ocean Ridge in April 2014 when in fact he was. And it came to light during the trial that he had lied in prior court proceedings in order to gain a financial advantage. (*See* Findings of Fact ¶¶ 40b, c (asserting in a *pro se* cross-complaint filed in a related case that Okada was a fifty percent owner of Ocean Ridge when Whitehead knew he was not)). Simply put, Whitehead over the past three years has repeatedly obstructed the judicial process by submitting false testimony and refusing to adhere to judicial orders. *See A-Plus*

*Roofing*, 39 F.3d at 1419 (referring a case for criminal contempt proceedings when contemnor demonstrated "a pattern of not just weeks or months but years of contumacy"). Whitehead has engaged in similar conduct in another ongoing proceeding, where he failed to bring the necessary documents to his debtor's examination, then failed to show up to his rescheduled debtor's examination (resulting in the issuance of a bench warrant), failed to bring the necessary documents to the second rescheduled debtor's examination, and then showed up with only some of the necessary documentation to the third rescheduled debtor's examination. (Krolikowski Decl. ¶¶ 4–6, Doc. 300-7.) At this point, allowing this subterfuge to go unsanctioned would be unconscionable. Second, civil contempt sanctions would not penalize Whitehead because he likely would refuse to pay them. Despite making luxury purchases as late as December 2016 and collecting tens of thousands of dollars in rental income, Whitehead has made no effort to pay his judgment creditors and additional amounts imposed in sanctions will likely go unpaid. (*See* Krolikowski Decl. ¶¶ 2–8; December Chase Bank Record, Exh. 1, Doc. 300-8.) Thus, while the Court certainly does not take this step lightly, Whitehead's pattern of conduct justifies a criminal contempt referral.

### IV. CONCLUSION

For the aforementioned reasons, Okada's Motion for an Order to Show Cause is GRANTED IN PART and DENIED IN PART. The Court GRANTS Okada's request for a criminal referral as to Whitehead's repeated attempts to sell Lions Gate, denial of access to Lions Gate, refusal to hand over all bank records relating to Lions Gate rentals, and refusal to hand over all non-privileged records stored on the "www.lionsgatemansion.com" website or "info@lionsgatemansion.com" email account. Instead of an order to show cause, however, the Court will issue an arrest warrant under Federal Rule of Criminal Procedure 42 because the Court has determined, based on Whitehead's history in this litigation, which includes his failure to appear at a court-ordered proceeding, that a warrant is more likely to secure his appearance. Separately, in accordance with the Court's Receivership Order and Final Judgment, Whitehead is ORDERED to provide the Receiver

with any and all information necessary to access the VRBO/Homeaway account within forty-eight hours. Failure to do so may result in additional contempt proceedings.

The Court Clerk is ordered to arrange for a jury trial on November 7, 2017 at 9:00 a.m. in Courtroom 10A, 411 W. 4th St., Santa Ana, CA 92701, and this matter is hereby referred to the United States Attorney's Office for prosecution of this criminal contempt proceeding under Federal Rule of Criminal Procedure 42(a)(2). The Court Clerk is instructed to forward this Order, the Court's Findings of Fact and Conclusion of Law (Doc. 270), the Receivership Order (Doc. 278), and the Final Judgment (Doc. 316) to the United States Attorneys' Office.

DATED: July 28, 2017

JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE