UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br>MARK WHITEHEAD,<br>Defendant. | Case No.: SACR 17-00154-JLS<br><br>ORDER DENYING DEFENDANT'S MOTION TO RECUSE JUDGE STATON |

**I. INTRODUCTION & BACKGROUND**

Beginning in September 2015, Defendant Mark Whitehead has been a civil defendant in litigation before Judge Staton. (*See Donald Okada v. Mark Whitehead*, Case No. 8:15-cv-1449-JLS-KES (C.D. Cal. Sept 3, 2015) [hereinafter, "Civil Case"].) The Civil Case concluded with a jury finding in favor of plaintiff after trial was held in December 2016. (Dkt. 27 [Defendant's Motion, hereinafter "Mot."] at 4.) During the

Civil Case, Judge Staton sanctioned Defendant for making false statements and failing to preserve evidence, amongst other misconduct. (Civil Case Dkts. 45, 74, 97, 140, 263.) Judge Staton also issued an order to show cause why Defendant's attorney should not be sanctioned for failing to timely file a Memorandum of Contentions of Fact and Law in advance of trial. (*Id*. Dkt. 178.) After the jury trial, Judge Staton made a finding that Defendant's trial testimony lacked credibility in her findings of fact and conclusions of law. (*Id*. Dkt. 270, ¶ 40.) On April 17, 2017, Judge Staton issued an order appointing a Receiver in the Civil Case and requiring Defendant to execute and prepare documents regarding the Receiver's proposed sale of the property known as Lions Gate, (*id*. Dkt. 278 ¶¶ 20–21), vacate and not make any further attempts to occupy or reside in Lions Gate, (*id*. ¶ 22), and not attempt to sell or transfer Lions Gate, (*id*. ¶ 23).

On May 25, 2017, the plaintiff in the Civil Case filed an application for order to show cause regarding contempt, alleging that Defendant had violated the Receivership Order. (*Id*. Dkt. 300.) On July 28, 2017, Judge Staton issued an order granting most of the plaintiff's application for contempt, and found that Defendant had violated the Receivership Order. (*Id*. Dkt. 329.) More specifically, Judge Staton found that Defendant "committed contemptable conduct" in four ways: (1) attempting to sell the Lions Gate property; (2) denying the Receiver access to Lions Gate; (3) failing to disclose bank records; and (4) failing to hand over all online rental account information. (*Id*. at 6–8.) In describing Defendant's violations, the Order stated that "[b]y listing Lions Gate on his personal website, his Facebook page, and a real estate website, [Defendant] defied the Court's unmistakable instruction," (*id*. at 6); "[Defendant] does not dispute that he denied the Receiver access to the property after learning of this Court's Receivership Order," (*id*. at 7); "[Defendant] has engaged in contemptuous conduct by refusing to hand over all non-privileged records stored on the 'www.lionsgatemansion.com' website and the related 'info@lionsgatemansion.com' email account," (*id*. at 8); and "[i]n contravention of these Orders, [Defendant] has not

handed over his . . . bank account records," (*id*.). Judge Staton ultimately referred Defendant for criminal prosecution. (*Id*. at 9–11.) Judge Staton's analysis of whether a criminal contempt referral was warranted began with the following:

> Although "the least possible power rule places some limits on the seeking of contempt sanctions[,]" this principle requires a court to consider civil contempt before initiating criminal contempt proceedings "only in those cases where it is attempting to coerce future behavior." *NLRB v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1418 (9th Cir. 1994) (affirming civil contempt sanctions and referring case to district court for criminal contempt trial); *see Armstrong*, 781 F.2d at 703. Thus, "[w]hen . . . the end is punishment of past behavior, criminal contempt can be appropriate without civil contempt being considered first." *A-Plus Roofing, Inc.*, 39 F.3d at 1418. Here, because the Court's aim is to punish Whitehead, referral for criminal contempt proceedings under Rule 42 is appropriate and, indeed, necessary.

(*Id*. at 9.)

On October 27, 2017, Judge Staton held a status conference regarding Defendant's criminal contempt case. (Dkt. 10.) Prior to the status conference, the Government had proposed a sentence of six months and a bench trial. (Dkt. 11 at 5.) Judge Staton determined that Defendant's underlying conduct related to fraud, and based on the applicable Sentencing Guidelines, his sentence would exceed the six months range, mandating a jury trial. (Mot. Ex. A 8:19-9:6.) During the hearing, Defendant's criminal counsel argued that Defendant's failure to comply with the Court's orders was in part due to a breakdown in the attorney-client relationship between Defendant and his civil attorney. (*Id*. 11:11-13:14.)[1] Judge Staton rejected this argument, stating that "both

---

[1] Defendant's civil attorney, Mr. Bryant, also addressed Judge Staton and argued that, "there ha[d] been a breakdown" in the attorney-client relationship. (Mot. Ex. A 19:25-20:1.) Mr. Bryant stated, "I'm not the happiest attorney on earth with my client," "I do not have a good relationship with him," and "I'm probably more adversarial [to Defendant] than anything at this point." (*Id*. 20:1-2; 20:19-20; 20:25-21:1.) Mr. Bryant also argued that, "[t]he one thing I know about [Defendant] is, he's not a flight risk. [He] has appeared at every court appearance he's supposed to be at . . . and I do not personally believe that he . . . poses a threat to society." (*Id*. 20:3-23.)

counsel are in the unfortunate position of having less information about this case than the Court does," (*id*. 13:17-19), and she thereafter detailed the actions Defendant took in the course of the civil proceedings before the alleged breakdown in attorney-client relationship, (*id*. 14:16-16:3). Judge Staton noted that, "I have had [Defendant] in front of me over the course of years now. And I can tell you that there have been many instances that had nothing to do with communications from his attorneys where he was not truthful with the Court or truthful with the jury, so I do not accept that this is an attorney problem." (*Id*. 15:11-16.) "He–the offense here is violating a direct court order in a number of ways. That–those ways have nothing to do with communication from an attorney. It was independent action by [Defendant]." (*Id*. 15:22-25.)

Judge Staton ordered that Defendant be detained pending trial because he was a flight risk, he posed an economic danger to the community, and no combination of conditions would assure his presence or protect the community. (*Id*. 9:14-19, 17:1-25.) In Judge Staton's assessment of the factors for pretrial release, (*id*. 15:21-17:25), she assessed the "weight of the evidence" and found that:

> The existence of this court order is undisputed. [Defendant's] own declaration and documentary evidence has already been adduced to show a violation and the intentional nature of the violation. So the weight of the evidence is strong. Whether a jury will determine that it is proof beyond a reasonable doubt is up to the jury, but the Court has to look at the weight of the evidence. And right now the Court views that as strong.

(*id*. 16:4-12).

On November 3, 2017, Defendant applied for reconsideration of bond, (Dkt. 14), in light of Pretrial Services' recommendation that he be released on a $50,000 bond by a responsible third party with full deeding of property, (Mot. Ex. B 3:23-4:1). On November 9, 2017, Judge Staton held a hearing on Defendant's application and once again denied bond. (*See generally Id*.) Defendant proposed that his daughter, Ms. Brie

Whitehead, would act as surety. (*Id*. at 4:2-8.)² Judge Staton referred to the declaration of the plaintiff's counsel in the Civil Case, which detailed how Ms. Whitehead had not been truthful during trial. (*Id*. 4:22-6:1.) Judge Staton concluded that "Ms. Whitehead doesn't have any credibility with the Court coming in at this point. So, to the extent that we're relying on anything you were told by Ms. Brie Whitehead, unfortunately, based on all of the documentation I have in front of me, that would not be appropriate." (*Id*. 6:8-12.) In reaching her conclusion, Judge Staton noted that "because this is in the Court's view almost -- the continued litigation, I think what's -- what the defendant and, perhaps, his family members fail to recognize now is that we have transcripts. We have documentation that reflects them saying one thing and then another, which oftentimes we don't have at this stage." (*Id*. 6:13-18.)

Before the Court is Defendant's motion for recusal of Judge Staton based on the above-described findings and statements that she made during the prior civil proceeding and this criminal proceeding. (Mot.) Defendant essentially contends that Judge Staton has demonstrated a level of bias against him that will preclude a fair trial. (*Id*.) For the following reasons, the motion is DENIED.

## II. DISCUSSION

All judges are entitled to a presumption of integrity and impartiality. *Withrow v. Larkin*, 421U.S. 35, 47 (1975). However, 28 U.S.C. § 455(a) requires judicial recusal "in any proceeding in which [the judge's] impartiality might reasonably be questioned." Under Section 455(a), a court must make an objective determination "whether a

---

² Judge Staton also was not interested in having another third party, other than Ms. Whitehead, acting as a surety. She stated that, "I just don't have any confidence that anything that's being proffered is going to result in [Defendant's] appearance. In fact, if it's not a family member, I have even greater concern that [Defendant] would do whatever it took to get himself out of this circumstance, even if it meant that that third party was left holding the bag. That's – that's consistent with everything I have in front of me so, no." (Mot. Ex. B 7:25-8:7.)

reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Clemens v. U.S. Dist. Court for Cent. Dist. of California*, 428 F.3d 1175, 1178 (9th Cir. 2005); *Liteky v. United States*, 510 U.S. 540, 548 (1994). The Ninth Circuit has ruled that a "'reasonable person' in this context means a 'well-informed, thoughtful observer,' as opposed to a 'hypersensitive or unduly suspicious person.'" *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008).

It is well-established federal law that "judicial rulings alone almost never constitute a valid basis for bias or partiality." *Liteky*, 510 U.S. at 555 (citation omitted). "In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show that reliance upon an extrajudicial source; and they can only in the rarest circumstances evidence the degree of favoritism or antagonism required [ ] when no extrajudicial source is involved." *Id*. Additionally, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of trial that are critical or disapproving of, or even hostile to, counsel, the parties or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source and they will do so if they reveal such a high degree of favoritism to make fair judgment impossible." *Id*. As the Ninth Circuit has observed, "[w]hile it is important that judges be and appear to be impartial, it is also important, however, that judges not recuse themselves unless required to do so, or it would be too easy for those who seek judges favorable to their case to disqualify those whom they perceive to be unsympathetic merely by publicly questioning their impartiality." *Perry v. Schwarzenegger*, 630 F.3d 909, 916 (9th Cir. 2011).

//

Defendant's proffered evidence of bias are Judge Staton's findings of fact and law that she appropriately made, and that were based on Defendant's conduct and testimony before her during the civil proceedings. Judge Staton was required by law to review the record and make certain findings about Defendant's conduct in the Civil Case. Further, Judge Staton had the inherent power, as a district court judge, to impose sanctions to manage her cases and courtroom effectively and to enforce compliance with her lawful orders. *See, e.g., Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). The district court may impose fines or imprisonment on any person through civil contempt proceedings in order to coerce compliance with the district court's orders or through criminal contempt proceedings in order to punish violations of its orders. 18 U.S.C. § 401; *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) ("Courts thus have embraced an inherent contempt authority as a power necessary to the exercise of all others.") (internal quotations and citations omitted). Defendant provides no evidence of any extrajudicial source of bias, nor anything that indicates Judge Staton harbors a personal bias or prejudice against Defendant.

It was part of Judge Staton's judicial duties to assess Defendant's credibility and his daughter's credibility as a witness, and to sanction his and his lawyer's conduct when necessary. It was also part of Judge Staton's judicial duties to determine if Defendant had violated her Order in order to refer him for criminal prosecution, and to state her reasons for referral. Defendant points to nothing outside of the record before Judge Staton that formed the basis of her judicial rulings and findings. Defendant makes much of Judge Staton's statement in her referral order that "the Court's aim is to punish [Defendant]," (Civil Case Dkt. 329 at 9), analogizing this case to *United States v. Antar*, 53 F.3d 568, 573 (3d Cir. 1995). In *Antar*, the district court judge stated at sentencing that "from day one" his goal was to punish the defendants for their conduct, and the court of appeal determined this showed a "high degree of antagonism against a criminal defendant." *Id*. at 573–74. The Third Circuit differentiated *Antar* from most because the

judge said in "unambiguous language" that his goal from the beginning was "something other than what it should have been." *Id*. at 576. Unlike the judge in *Antar*, Judge Staton made her statement appropriately in the context of differentiating civil and criminal contempt, and as such it does not show a high degree of antagonism, let alone any antagonism against Defendant. And it was imperative that Judge Staton make clear on the record whether the proceeding was for civil or criminal contempt. *See Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1042 (9th Cir. 2008) (observing that to ascertain whether the Ninth Circuit has jurisdiction over an appeal of a contempt order, the court "must decide whether the order before it is one for civil contempt or one for criminal contempt," and that the "distinction between the two forms of contempt lies in the intended effect of the punishment imposed. The purpose of civil contempt is coercive or compensatory, whereas the purpose of criminal contempt is punitive.") (citations omitted). For Defendant to now criticize Judge Staton as being bias because she did as she was obligated to do is not well-founded in the law and, quite frankly, unfair.

Defendant also takes out of context a comment Judge Staton made in a hearing where she denied pretrial bond. Defendant highlights Judge Staton's statement that evidence "has already been adduced to show a violation and the intentional nature of the violation" of the court's Order. (Mot. Ex. A 16:4-8). However, this statement is immediately followed by her statement that "whether a jury will determine that it is proof beyond a reasonable doubt is up to the jury." (*Id*. 16:9-12.) There is no indication that Judge Staton has predetermined Defendant's guilt and sentence. Moreover, Judge Staton's findings in support of denying bond pending trial and in denying Defendant's motion to reconsider the bond decision were judicial rulings based on the course of the civil proceedings and the evidence before her. Defendant's evidence demonstrates no more than Judge Staton applying the law to the facts, as she was required to do to rule on the motions before her. "*Adverse findings do not equate to bias.*" *United States v.*

*Johnson*, 610 F.3d 1138, 1147–48 (9th Cir. 2010) (emphasis in original) (affirming the district court's denial of the defendants' motion to recuse the presiding judge where the presiding judge had dismissed the defendants' prior civil case, ordered sanctions against their attorney, awarded costs and fees to the civil defendants, and referred the matter for criminal prosecution).

The Ninth Circuit has routinely affirmed the denial of motions to recuse district court judges pursuant to Section 455(a) where, as here, the proffered basis for recusal arises out of the judge's official actions. *See e.g.*, *United States v. Sutcliffe*, 505 F.3d 944, 958 (9th Cir. 2007) (affirming the denial of a motion to recuse the presiding judge, despite claims that the presiding judge had ordered defendant to undergo a competency evaluation, admonished defendant regarding trial practices, failed to consider defendant's motion to dismiss and was the subject of a civil complaint lodged by defendant, as defendant failed to show that the presiding judge's actions were either based on an extrajudicial source or revealed such a high level of antagonism as to make fair judgment impossible); *Clemens*, 428 F.3d at 1178–79 (providing a "non-exhaustive list of [] matters not ordinarily sufficient to require Section 455(a) recusal," which included "the fact that a judge has previously expressed an opinion on a point of law or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular criminal offense" and "prior rulings in the proceedings or another proceeding, solely because they are adverse"); *United States v. 292,888 in U.S. Currency*, 54 F.3d 564, 566–67 (9th Cir. 1995) (upholding denial of a motion to recuse a judge from sitting in forfeiture case where the judge previously presided over the criminal trial in which the defendant was found guilty, as the judge's knowledge of the defendant developed through execution of his judicial duties).

//

Simply stated, nothing Judge Staton did was outside the scope of her official duties. Judge Staton formed her opinions on the basis of facts introduced or events that occurred in the course of court proceedings, and those opinions do not display a deep-seated favoritism or antagonism that would make fair judgment impossible. A well-informed, thoughtful observer would not conclude that Judge Staton's impartiality might reasonably be questioned.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to recuse Judge Staton is DENIED.

DATED: December 11, 2017

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE